# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MARTIN AULICINO,                                        CASE NO.:

        Plaintiff,

vs.

CAPITAL ONE BANK, N.A.,

        Defendant.
_____/

## DEFENDANT, CAPITAL ONE BANK, N.A.'S NOTICE OF REMOVAL

Defendant, Capital One Bank, N.A. ("Defendant"), through undersigned counsel, hereby removes the above-captioned action from the County Court of the Fifth Judicial Circuit in and for Hernando County, Florida, styled as *Martin Aulicino v. Capital One Bank, N.A.*, Case No. 272020SC000934SCAXMX, to the United States District Court for the Middle District of Florida. As set forth more fully below, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on the fact that this particular Florida Consumer Collection Practices Act ("FCCPA") claim under § 559.72(18) is preempted by conflict with the Truth in Lending Act ("TILA"), 15 U.S.C. § 1637(b), as amended by the Credit Card Accountability Responsibility and Disclosure ("CARD") Act of 2009, and Regulation Z ("Reg Z"), 12 C.F.R. § 226.7. Further, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 because Defendant has satisfied the procedural requirements for removal. In support of the Notice of Removal, Defendant states the following:

**I.    STATE COURT ACTION**

On or about April 18, 2020, Plaintiff, Martin Aulicino ("Plaintiff"), commenced this action against Defendant by filing his Statement of Claim ("Complaint", plus various motions and

discovery requests) with the Clerk of the County Court of the Fifth Judicial Circuit in and for Hernando County, Florida (the "State Court Action"). This State Court Action is assigned to Case No. 272020SC000934SCAXMX.  As reflected on the return of service, Defendant was formally served on or about April 29, 2020.

In the one-count, sixteen-paragraph Complaint, Plaintiff raises a cause of action pursuant to the FCCPA, Fla. Stat. § 559.72(18). Specifically, Plaintiff alleges that, on or about February 11, 2020, Plaintiff sent through his attorney to the Defendant a letter instructing Defendant to direct all communications concerning the subject credit card account to counsel for the Plaintiff. (Compl. ¶ 9).  Plaintiff alleges that, despite receipt of this letter on February 14, 2020, which allegedly provided actual knowledge of his counsel's representation, Defendant sent Plaintiff a monthly statement on March 11, 2020. (Compl. ¶¶10-12). Plaintiff alleges that because his counsel had instructed Defendant "to direct all communications concerning the account to counsel for the Plaintiff" (Compl. ¶9), this monthly statement sent directly to the Plaintiff violated Florida Statutes § 559.72(18), which states:

> In collecting consumer debts, no person shall: … (18)   Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

As a result, the Complaint seeks various forms of relief for Plaintiff including damages, costs, interest, injunctive and declaratory relief and attorneys' fees.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS FEDERAL QUESTION JURISDICTION UNDER CONFLICT PREEMPTION

### A. Standard for Demonstrating Subject Matter Jurisdiction

The burden of establishing subject matter jurisdiction falls on the party attempting to invoke the jurisdiction of the federal court. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); *see also Rocky Mountain Holdings, LLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 608-CV-686-ORL-19KRS, 2008 U.S. Dist. LEXIS 65732, 2008 WL 3833236, at *1 (M.D. Fla. Aug. 13, 2008). The party seeking removal has "the burden of producing facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence." *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001).

### B. Conflict Preemption Standard

Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). One category of cases of which district courts have original jurisdiction is "[f]ederal question" cases: cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Ordinarily, determining whether a particular case arises under federal law turns on the "'well-pleaded complaint'" rule. *See Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 9-10, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983). This rule requires that, generally speaking, "whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute[,] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the

defendant may interpose." *Taylor* v. *Anderson,* 234 U.S. 74, 75-76, 58 L. Ed. 1218, 34 S. Ct. 724 (1914).  In other words, the existence of a federal defense normally does not create statutory "arising under" jurisdiction, *Louisville & Nashville R. Co.* v. *Mottley,* 211 U.S. 149, 53 L. Ed. 126, 29 S. Ct. 42 (1908), and "a defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law," *Franchise Tax Bd.*, *supra*, at 10, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (emphasis in original).

However, there is an exception, applicable here, to the well-pleaded complaint rule, *i.e.,* "when a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed. *Beneficial Nat. Bank* v. *Anderson*, 539 U.S. 1, 8, 156 L. Ed. 2d 1, 123 S. Ct. 2058 (2003). *See* U.S. Const. art. VI, cl. 2. "Under this principle, Congress has the power to preempt state law." *Arizona v. United States*, 132 S. Ct. 2492, 2500, 183 L. Ed. 2d 351 (2012) (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000)). Preemption can occur in a number of circumstances. Its most straightforward form-- express preemption-- occurs when Congress "enact[s] a statute containing an express preemption provision." *Id*. at 2500-01. The second-- field preemption-- precludes the states "from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Id.* at 2501 (citing *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 115, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992)). Third, and most critical for present purposes, is "conflict preemption" wherein "state laws are preempted when they conflict with federal law." *Id*. (citing *Crosby,* 530 U.S. at 372).

Conflict preemption covers "cases where 'compliance with both federal and state regulations is a physical impossibility.'" *Odebrecht Constr. v. Sec'y, Fla. DOT*, 715 F.3d 1268, 1274 (11th Cir. 2013) (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142-

43, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963)). "But conflict preemption is broader than that; it also covers cases 'where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id*. (some internal quotes removed; quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941)). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id*. (quoting *Crosby*, 530 U.S. at 373). The "conflict preemption analysis requires a searching inquiry into the provisions of both the federal and state laws at issue". *Id*.

    C.    **Section 559.72(18), Fla. Stat., Conflicts With and Is Preempted by TILA 15 U.S.C. § 1637(b) and Regulation Z, 12 C.F.R. § 226.7**

The only claim asserted herein is an "improper recipient" FCCPA claim, that is, that Defendant has violated § 559.72(18) by communicating to the consumer directly as opposed to his lawyer, after notice he had a lawyer. These "improper recipient" claims may be based on phone calls or different types of written communication ranging from monthly statements, as here, or true dunning letters. Here, Plaintiff's claim is based on a ***monthly statement***, the sole "communication" (if a statement can be deemed a "communication") governed exclusively by the relevant language of TILA and Regulation Z.   In other words, Defendant is not arguing herein that TILA or Reg Z preempts the whole FCCPA – just this particular FCCPA claim.[1]  And, as the Honorable Virginia M. Hernandez Covington has ruled, the FCCPA can be *partially* preempted by federal law. *See Arnold v. Cap. One Servs., LLC*, No. 8:17-cv-1416-T-33AEP, 2017 U.S. Dist. LEXIS 161781, at *4 (M.D. Fla. Oct. 2, 2017) (Claims under FCCPA §§ 559.72(7) and (9) claims based on inaccurate

---

[1] Defendant makes no admission regarding whether it sent the subject monthly statement.

credit reporting are barred by express preemption under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681t(b)(1)(F)).[2]

The specific question presented in this removal is whether the FCCPA's requirement in § 559.72(18) -- that "communications" be sent to counsel and not to the consumer -- is preempted by TILA and Reg Z which address monthly statements. Indeed, TILA's implementing regulation, Reg Z at 12 C.F.R. § 226.7 mandates that a "creditor shall furnish *the consumer* with a periodic statement" containing specifically enumerated information. 12 C.F.R. § 226.7 (emphasis added). Reg Z defines the term "consumer" as a "natural person." 12 C.F.R. § 226.2(a)(11) ("Consumer means a *cardholder or natural person* to whom consumer credit is offered or extended….") (emphasis added); 12 C.F.R. § 226.2(a)(8). Under Reg Z, the term "Cardholder means a *natural person* to whom a credit card is issued for consumer credit purposes, or a *natural person* who has agreed with the card issuer to pay consumer credit obligations arising from the issuance of a credit card to another natural person…." (emphasis added). That is, *Reg Z requires the creditor to send statements either to the natural person who the credit card was issued to or to a natural person who has agreed to pay the amounts owed on the card*.[3]

Similarly, TILA, like Reg Z, also sets up a clear distinction between "persons," which may include an entity -- like a law firm -- and "natural persons" which means only humans. *See* 15 U.S.C. § 1602(c), (d). *See Hess v. Citibank, (S.D.), N.A.,* 459 F.3d 837, 843–44 (8th Cir. 2006) (holding billing statement requirement under TILA and Reg Z applies only to natural persons, not to organizations). "Section 127 [*i.e.,* 15 U.S.C. § 1637], which requires a creditor to send the

---

[2] As *Arnold* demonstrates, there are other FCCPA claims based on the "content" of the communication under § 559.72(9), such as allegations of attempts to collect an illegitimate debt, or based on the "method" of the communication under § 559.72(7), *i.e.,* allegedly abusive or harassing collection efforts based on the timing, numerosity or hostility of the communications. To the extent those claims were also based on monthly statements, they too would be preempted, but such claims are not made in this action.

[3] Plaintiff has not alleged that his counsel has agreed with Capital One to pay the amounts owed on the card account.

"obligor" a statement for each billing cycle in which a finance charge is imposed, is entitled "open end consumer credit plans," and sets forth standards, including the periodic statement requirement, specifically applying to these accounts." *Hess*, 459 F.3d at 834 (citing 15 U.S.C. § 1637). "In a definition section, the statute explains that the adjective 'consumer' is used with reference to a credit transaction, characterizes the transaction as one in which the party to whom the credit is offered or extended is *a natural person*, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id*. at 834-44 (quoting 15 U.S.C. § 1602(h)). For an extension of credit to be considered an extension of "consumer" credit, the party to whom the credit is extended must be a natural person. *Id*. (citing *Am. Express Co. v. Koerner*, 452 U.S. 233, 241, 101 S. Ct. 2281, 68 L. Ed. 2d 803 (1981)). "Although the statute does not specifically define the term 'obligor,' the use of the term in a section regulating open-end consumer credit plans implies that the party to whom credit is being extended, *i.e.*, the obligor, is a consumer, and thus a natural person." *Id*. at 844.

These TILA and Reg Z provisions requiring that periodic statements be sent to a natural person preclude the argument that compliance with those provisions can be achieved by sending the statements to the consumer's law firm, as Plaintiff alleges should have been done here. *See Marcotte v. Gen. Elec. Capital Servs., Inc.,* 709 F. Supp. 2d 994, 1000 (S.D. Cal. 2010) ("TILA and Regulation Z require companies that provide open-ended credit to 'furnish the consumer with a periodic [billing] statement ...' if the consumer has a balance on the account. 12 C.F.R. § 226.7; *see also* 15 U.S.C. § 1637(b). There are no exceptions. ... This requirement directly conflicts with any interpretation that [the California debt collection law] prohibits the sending of billing statements by a credit-card company to a represented debtor."). Like the FCCPA section Plaintiff alleges was violated here, California's equivalent Rosenthal Fair Debt Collections Practices Act

bars debt collection communication made to a consumer when the consumer is represented by counsel. Cal. Civ. Code § 1788.14. Because it is so well reasoned, and in anticipation of Plaintiff's argument that compliance with both FCCPA § 559.72(18) and TILA/Reg Z is possible regarding periodic statements, *Marcotte* is quoted below at length.

> Here, compliance with Plaintiff's interpretation of § 1788.17 and federal regulations is a physical impossibility. Obviously, Defendants cannot send billing statements to Plaintiff as required by TILA and Regulation Z, and also refrain from sending them under § 1788.17. Thus, Plaintiff's interpretation would result in the partial invalidity of § 1788.17. …
>
> Plaintiff believes there is a way to avoid preemption and give effect to both laws. ***Plaintiff suggests that GEMB could send the statements to Plaintiff's lawyer. That way, Plaintiff could comply with TILA and Regulation Z's requirement to send billing statements and with § 1788.17 's purported prohibition.***
>
> ***Plaintiff's proposal, however, is unworkable. Regulation Z requires that a creditor send statements to the "consumer."*** 12 C.F.R. § 226.7***. And it defines a consumer as a "natural person." 12 C.F.R. § 226.2(a)(8), (a)(11);*** *Hess v. Citibank, (S.D.), N.A.,* 459 F.3d 837, 843–44 (8th Cir. 2006) (holding billing statement requirement under TILA and Regulation Z applies only to natural persons, not to organizations). ***Thus, billing statements must be sent to natural persons, like Plaintiff, and not to organizations, like Plaintiff's law firm.***
>
> Plaintiff rests most of his argument on the Official Staff Commentary ("OSC") to Regulation Z. It states that "[a]n attorney and his or her client are considered to be the same person for purposes of this regulation when the attorney is acting within the scope of the attorney-client relationship with regard to a particular transaction." 12 C.F.R. Part 226, Supp. I, OSC, 226.2(a)(22)–2 (emphasis added). Although at first blush this appears to support Plaintiff's argument, there are two reasons why it does not.
>
> First, "[t]he TILA, like Regulation Z, also sets up a clear distinction between 'persons,' which may include an estate, and 'natural persons.' " *Hess,* 459 F.3d at 843 (citing 15 U.S.C. § 1602(c), (d)). And as discussed above, a creditor must send a billing statement to a natural person. 12 C.F.R. § 226.7 (periodic statement must be sent to "consumer"); 12 C.F.R. § 226.2(a)(11) (consumer means cardholder or "natural person"); 12 C.F.R. § 226.2(a)(8) (cardholder means "natural person"). The OSC states that "[a]n attorney and his or her client are considered to be the same *person.*" It does not say that an attorney and his client are to be considered the same *natural person.* Accordingly, the OSC does not apply to the requirement to send billing statements.

> Second, even assuming a lawyer and the lawyer's client may be considered the same natural person, requiring credit-card companies to send statements to law firms would violate Regulation Z in other respects. Focusing on the latter part of the OSC, a lawyer and the client are only the same person "when the attorney is acting within the scope of the attorney-client relationship with regard to a *particular transaction.*" 12 C.F.R. Part 226, Supp. I, OSC, 226.2(a)(22)–2 (emphasis added). Thus, whether a person and his lawyer are the same for purposes of Regulation Z depends on whether the lawyer represents the person on a "particular transaction." *Id.* But the distinguishing feature of open-ended credit plans like the one at issue here are repeated transactions—not a single transaction. *See* 15 U.S.C. § 1602(i); 12 C.F.R 226.2(a)(20)(i).
>
> Naturally, billing statements from credit-card companies generally contain several transactions. A credit-card company should not have to determine whether the consumer is represented with respect to all, some, or none of those transactions and issue separate billing statements to the lawyer and to the consumer.
>
> Moreover, GEMB argues convincingly that sending billing statements to law firms instead of consumers would reduce consumer protections. Consumers have only sixty days to contest billing errors and fraudulent charges, and any delay could foreclose a consumer's ability to resolve those errors. 15 U.S.C. § 1666. Not only would sending the statements directly to law firms undercut a consumer's ability to timely contest charges, but prudent law firms would simply forward these statements to their clients as soon as possible. Thus, even under Plaintiff's interpretation, consumers with prudent lawyers would regularly receive billing statements. Not only is it nonsensical to require credit-card companies to send the statements to law firms so that the law firms can forward them to the consumer, but as discussed above, it is also an incorrect interpretation of the law.

*Marcotte,* 709 F. Supp. 2d at 1000-01.

In sum, the FCCPA's prohibition in § 559.72(18) against the sending of periodic statements directly to represented consumers hopelessly conflicts with TILA and Regulation Z's requirements that such statements be sent directly to represented consumers. And both TILA and Reg Z contain provisions expressly preempting any conflicting state laws *to the extent of the inconsistency*. *See* TILA, 15 U.S.C. § 1610(a)(1); Reg Z, 12 C.F.R. § 226.28. This Court therefore has conflict preemption over this particular FCCPA claim.

### III. PREREQUISITES FOR REMOVAL HAVE BEEN MET

1. The prerequisites for removal under 28 U.S.C. §§ 1331, 1441 and 1446 have been met.

2. <u>Removal to Proper Court</u>. Pursuant to Middle District Local Rule 1.02(b)(4), the United States District Court for the Middle District of Florida, Tampa Division, is the federal judicial district and division encompassing the Fifth Judicial Circuit Court in and for Hernando County, Florida. Thus, this Court is part of the "district and division" embracing the place where this action was filed. 28 U.S.C. § 1446(a); M.D. Fla. Local Rules 1.02(b)(4), 4.02(a). Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1441(a).

3. <u>Original Jurisdiction</u>. The prerequisite for 28 U.S.C. §1441(a) is satisfied because this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

4. <u>Removal is Timely</u>. This removal is timely because 30 days have not elapsed since Defendant received formal service of the Complaint on April 29, 2020. *See* 28 U.S.C. § 1446(b).

5. <u>Pleadings and Process</u>. Attached hereto as **Composite Exhibit A** are copies of all process, pleadings, and orders served upon Defendant or filed in the State Court Action, together with the Complaint and an online docket listing all State Court filings. 28 U.S.C. § 1446(a); M.D. Fla. Local Rule 4.02(b).

6. <u>Notice</u>. Attached hereto as **Exhibit B** is a copy of a Notice of Filing Notice of Removal (without exhibits), which after filing of the herein Notice of Removal, the originals of which will be promptly served upon Plaintiff's counsel and filed with the Clerk of the County Court of the Fifth Judicial Circuit in and for Hernando, Florida. *See* 28 U.S.C. §§ 1446(a), (d).

7. <u>Signature</u>. This Notice of Removal is signed pursuant to Federal Rule of Civil Procedure 11. *See* 28 U.S.C. § 1446(a). As counsel for Defendant, we are authorized to execute this Notice of Removal on its behalf.

## IV.   RESERVATION OF RIGHTS/OBJECTIONS

8. This Notice of Removal does not waive any objections Defendant may have regarding defects in process or service of process, jurisdiction, venue or any other defense.

9. Defendant expressly reserves the right to state additional grounds for removal and to provide such additional evidence as may be required to support the grounds asserted in this Notice of Removal.

10. If questions arise as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to file a brief or further evidence, and to make an oral argument in support of removal.

WHEREFORE, Defendant, Capital One Bank, N.A., removes this action from the County Court of the Fifth Judicial Circuit in and for Hernando County, Florida to the United States District Court for the Middle District of Florida, Tampa Division.

Respectfully submitted,

*/s/ Andrew Kemp-Gerstel*
ANDREW KEMP-GERSTEL
Florida Bar No. 0044332
E-mail: akg@lgplaw.com
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone: (305) 379-0400
Fax: (305) 379-9626
*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 28th day of May, 2020, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                */s/ Andrew Kemp-Gerstel*
                                                ANDREW KEMP-GERSTEL

Richard K. Peck, Esq. (FBN: 47105)
Peck Law Firm, P.A.
12515 Spring Hill Drive
Spring Hill, Florida 34609
(352) 835-7977
service@pecklawfirmfl.com
litigation@pecklawfirmfl.com